MOBLEY v. CUMMINGS.

1. FINDINGS OF FACT—GIFTS.—This court approved findings of fact by the Circuit Judge, from written testimony reported to him to the effect that an alleged deed had never been executed, and that there never had been a parol gift of the land in question, but at most only an unfulfilled intention to give.

2. CONSTRUCTION OF WILL—SEPARATE CLAUSES.—A testator gave to his wife the residue of his estate, with a power of distribution among certain of his children, directing that the portions so assigned should be charged by her with certain limitations and remainders. He then declared that upon the death of his wife before him, he gave said residue to his son A to divide according to the son's discretion, among certain of testator's children, the son A retaining for his own use, and as trustee for his brother R, so much as he thought proper. Then, after a period in punctuation, testator further directed that if his wife survived him, and died after a partial execution of the trusts, the son A should carry out and perfect the trusts imposed upon the wife. And in another clause testator engrafted limitations upon all property received by said sons A and R. The testator having survived his wife, *held*, that no limitations were imposed upon the portions of the residue received by his children, except upon the portions of the said two sons.

3. IBID.—IBID.—The intention of a testator, to be reached by a consideration of the words he has used, and not from conjecture, must control in the construction of a will; and limitations imposed by one clause under one contingency cannot be applied to dispositions made in another clause under another contingency, even though the court can see no reason for the distinction.

4. EXECUTION OF POWERS BY COURT—EQUALITY.—The share of the residue retained by A for himself at his discretion, was limited to himself for life, with remainder to his issue, but he having died without having fully exercised this power of distribution, and without taking possession or control of a tract of land as a part of this residue, the court will make an equal division among all the beneficiaries named.

5. IBID.—IBID.—And in making such equal division, the son A, the donee of the power, and the remaindermen claiming his interests after his death, will not be entitled to any portion of this tract of land, unless they can show that A did not take to himself other portions of the residue which would be his full share of the whole upon such equal division.

Before WALLACE, J., Fairfield, June, 1890.

This was an action by Nathaniel F. Mobley against J. D. Cum-

mings, assignee, and others. The case is fully stated in the report of H. N. Obear, Esq., referee, which was as follows:

Pursuant to an order of this court, made in the above entitled action, and dated the 25th day of February, 1888, whereby it was referred to me to take proof of the plaintiff's title and interest in the subject-matter of this action, and of the interest of the several defendants therein, and upon all the issues raised by the pleadings herein; and to inquire into and report to this court if in my judgment, upon the proof and the testimony before me, an actual partition of the tract of land described in the complaint can be had without material injury to the rights of the parties, or whether a sale thereof will best further the interest of said parties, with full power to decide all issues raised by the pleadings herein, with leave to report any special matter, I respectfully report:

That this action is brought by the plaintiff, as a child of Andrew J. Mobley, deceased, against his brothers and sisters and other children of said Andrew J. Mobley, and also against J. D. Cummings, as assignee of the firm of Holmes & Durham, H. M. Haig (a grantee of said J. D. Cummings, assignee), and the children of Mrs. Lucretia McCrorey (who are alleged to have an interest in the real estate sought to be affected by this action), for the partition of five hundred acres of land, more or less, fully described in the ninth paragraph of the complaint.

The complaint sets forth that John Mobley died on the 21st day of June, 1879, leaving his last will, which was duly admitted to probate in Fairfield County on the 27th day of January, 1880; that in the eighth clause of said will, John Mobley bequeathed and devised all the rest and residue of his estate, both real and personal, to his wife, Catharine Mobley, in trust, first, that she should retain so much thereof as she might deem necessary for her maintenance and support; second, in trust, that she should divide the same among his children, excepting his three children, Marion R. Mobley, Dorcas McCrorey, and Nancy Thompson (who had been provided for in the 5th, 6th, and 7th clauses of said will), which children were to receive no part of the residue given in trust to his wife aforesaid; and upon the further trust that she should, by deeds duly recorded and exe-

cuted by her, subject the property so given by her in said divisions to the same limitations as were contained in the 5th, 6th, and 7th clauses of said will. That the limitations contained in the 5th, 6th, and 7th clauses of said will in effect gave the property therein devised and bequeathed to the respective devisees and legatees therein named, for and during the period of their natural lives, with remainders in fee to the issue of said children, and in the event said issue should die before majority, then and in that event the said property so devised should revert to the estate of said testator. In the ninth clause of said will, John Mobley further provided that, should his wife predecease him (which contingency actually happened), he devised and bequeathed the said residue to his son, Andrew J. Mobley, upon the same trusts, provisions, and limitations as he had directed to be carried out and executed by his said wife; and that in the tenth clause of said will, said John Mobley imposed upon the property which his said son, Andrew J. Mobley, should receive or retain for himself, the same limitations as he imposed upon the property devised and bequeathed in the 5th, 6th, and 7th clauses of said will.

The plaintiff further set forth that Mrs. Catharine Mobley, the wife of said John Mobley, predeceased him; and that Andrew J. Mobley, nominated in said will as an executor thereof, duly qualified as such; that the tract of five hundred acres above referred to was the property of said John Mobley at the time of his death, and was a part of the property devised under the residuary clause of said will. The plaintiff then set forth the death of Andrew J. Mobley; that the plaintiff and the defendants, Lilla M. Mobley, Mary U. Mobley, Clarence W. Mobley, and Andrew F. Mobley, are his issue who survived him at the time of his death; and he claimed for said children of Andrew J. Mobley a one-sixth interest in the fee of said five hundred acres. Allegations showing the claim of the defendants, H. M. Haig, J. D. Cummings, as assignee, and of the children of Lucretia McCrorey, and that the defendants, H. M. Haig and J. D. Cummings, as assignee, have been in the exclusive possession of said land since the 20th day of December, 1883, together with the customary formal allegations in a partition suit, were duly set out in said complaint which con-

cluded with the usual prayer for partition and for an account of the rents and profits by the defendants, H. M. Haig and J. D. Cummings, as assignee.

These last named defendants, H. M. Haig and J. D. Cummings, as assignee, filed an answer setting forth that Andrew J. Mobley, in the exercise of the power conferred on him by the will of John Mobley, retained for himself between fifteen hundred and sixteen hundred acres, besides a considerable amount of personal estate; that his children are in possession thereof, and that the same would constitute their share, if an equitable division of the estate of said John Mobley were made; also, that the children of Lucretia McCrorey are in possession of their full share of the rest of the estate of said John Mobley, Andrew J. Mobley, as executor, having conveyed to said Lucretia McCrorey about five hundred and seventy-eight acres of land in addition to the three hundred acres devised to her in said will. The answer then set forth that the said John Mobley was not, at the time of his death, seized or possessed of the premises described in the complaint; but that prior to his death he placed the children of Dorcas McCrorey in possession of the tract of land described in the complaint, with the express understanding, intention, and wish that said land should be their property; and that, relying thereon, the children of Dorcas McCrorey made valuable improvements upon said land, and that after the death of John Mobley, his children and others interested joined in a deed of the land to the children of Mrs. Dorcas McCrorey, whose title to the premises is held by said defendant, H. M. Haig.

The foregoing fully presents the status of the case as presented by the pleadings.

A considerable amount of testimony has been taken by me, and the same is submitted with this report. After hearing argument of counsel and after a careful consideration of this testimony, I find as matter of fact:

1. That on the 28th day of January, 1868, John Mobley was the owner of the four hundred and sixty-seven acres of land in question in this action; and on said last named day he caused said land to be surveyed, and a plat thereof made, with the ex-

pressed intention of giving the same to his daughter, Mrs. Dorcas McCrorey.

2. That thereafter the said John Mobley caused to be prepared a deed of conveyance to Mrs. Dorcas McCrorey of said land. Whether he ever signed this deed or not, I do not know. Mr. J. C. Caldwell thinks it was signed. Mr. R. T. Mockbee says he saw the deed, and it was then not signed. Mr. Jones says that Mr. Mobley fixed up, but would not sign it. Certain it is, that no such deed has ever been found, nor is there any record of any deed from John Mobley to Mrs. Dorcas McCrorey. But in my opinion, the subsequent conduct of Mr. John Mobley and his heirs render this a question of little practical importance.

3. That about three years before his death, John Mobley put the children of Dorcas McCrorey in possession of the land in question, and they remained in possession thereof until his death. Mr. Jones testifies that Mr. John Mobley was not pleased with the conduct of the McCrorey boys and often spoke about putting them off, and even directed Mrs. Jones (who managed for him) to put them off. But he does not seem to have meant what he said; certainly Mrs. Jones does not seem to have thought he was in earnest, for she did not put them off, and the McCrorey children remained on the place as long as the old man lived.

4. That the McCrorey boys built three cabins and a little dwelling house on the land, and dug two good wells. Mr. Jones says these improvements were not worth more than one hundred dollars. There is no other testimony as to their value, and I shall have to find it at that sum. The character of their possession is much disputed. Mr. Jones says, "They did not go into possession of this land as their own. * * * They did not work there to please him (John Mobley), and he then said he didn't intend them to have a dollar." Again, Mr. Jones says, "Mrs. Jones paid the tax on this land through witness from about the time her mother died until A. J. Mobley qualified as executor," covering the time of the McCrorey boys' possession. On the other hand, Edward P. Mobley, sr., says he often heard Mr. John Mobley say he was going to give the five hundred acres to the children of Mrs. Dorcas McCrorey. Mr. Edward P. Mobley afterwards modified the force of his statement, saying he was not sure that Mr. John Mobley

said this "often," but he knew he said so once. He added, that after this he always spoke of the place as the "McCrorey children's land;" would speak of going down to the "McCrorey place," and that he went down there pretty often. But however this may be, it would seem that the real character of the McCrorey children's possession must have been known to the family at the time of John Mobley's death; and I find:

5. That John Mobley died in June, 1879; and in July, 1879, Marion R. Mobley, *Andrew J. Mobley*, Nancy W. Jones, James H. Rion, committee of John C. Mobley, C. E. Jeter, Mary I. Mobley, Lucretia McCrorey, and Reuben Mobley, heirs at law of John Mobley, deceased, * * * "in pursuance of the intention and wish of their said father, John Mobley, deceased," conveyed to Catharine E. Hill, Susan J. Hill, John M. McCrorey, and Charles S. McCrorey, children of Dorcas [McCrorey] Feaster, the tract of land in question; and for themselves and their heirs they warranted the title against all claims.

It is true that this deed was made before the will of John Mobley was found, and while all parties supposed he had died intestate. It is also true that in his will Mr. Mobley directed that Mrs. Dorcas McCrorey was not to have any part of his residuary estate. There is also testimony that he refused to sign a deed to her; that he repeatedly declared her children should not have a cent; that he wanted them put off the land, &c. I do not doubt that Mr. Mobley made use of the expressions attributed to him, but I do very much doubt if he really *meant* them. It is not in testimony, but he was very old and feeble at the time of his death, and he was blind. I knew him quite well. He did not have the McCrorey boys put off the land, they remained thereon until his death; and shortly thereafter his entire family is found declaring in the most solemn manner that it was his wish and intention that the land should be conveyed to the McCrorey children. In the light of these incontestible facts, I am obliged to regard his expressions as nothing more than peevish exclamations, made by an old man, irritable from age and bodily affliction, and probably at the time displeased with his grandsons, but never intended by him to be acted upon.

As to the statement in the will that he did not wish Mrs. Dor-

cas McCrorey to share in his residuary estate, it must be borne in mind that the will was made in 1860, nineteen years before his death, and that in the meantime great changes had occurred, which may well have caused him to alter his intention as therein stated.     It must also be remembered that he gave the same direction as to his daughters, Marion R. Mobley and Nancy W. Thompson (Mrs. Jones), to both of whom he subsequently conveyed land.     Why he did not do so in the case of Mrs. Dorcas McCrorey, or whether, indeed, he did not convey to her the land, are questions I cannot answer; but after the solemn declaration by all his children, about one month after his death, that it was his wish and intention that the land should be conveyed to Mrs. Dorcas McCrorey's children, it does not lie in their mouths, nor in those of their children, to say that John Mobley did not himself convey the land to these McCroreys, because he never intended that it should be conveyed to them.

Again, the deed cannot be regarded as the voluntary deed of Marion R. Mobley, Andrew J. Mobley, and the others, but having been made in pursuance of the known "wish and intention" of their said father, John Mobley, it must be regarded as the deed of John Mobley himself, and therefore paramount to the will.     If John Mobley placed the children of Dorcas McCrorey in possession of the land, with the intent that it should be theirs (and such say his children—just after his death, when everything was fresh—was his intent), and if, relying on that intent, these McCrorey children expended their money and their labor on improving the land (as is testified to and not denied), then a case is presented on which a Court of Equity would unquestionably require the heirs of John Mobley to do the very thing they have done—make a conveyance to the Dorcas McCrorey children, and this, too, without regard to the will.     It is certainly proper for the heirs to do of their own motion what the court would require them to do; and their title, thus given, must be regarded as having the same legal force and effect as if made by John Mobley himself.

6. There is no testimony to show that Andrew J. Mobley, as executor, ever formally took or even claimed a right to take the possession of the tract of land in question; in 1882 it was sold

by the clerk of the court to Holmes & Durham as the property of C. E. Hill, S. J. Hill, J. M. McCrorey, and C. S. McCrorey, under proceedings for the partition thereof among these McCrorey children ; and I find, therefore, that these children of Dorcas McCrorey remained in undisturbed possession of the tract of land from the time John Mobley first placed them on the same, until it was sold by the clerk, as above stated.

7. Andrew J. Mobley died in December, 1883, a full year after the sale of this land to Holmes & Durham, but he seems to have taken no steps to reclaim possession of this land from these strangers to the family.

8. The remaining links in the chain of title from Holmes & Durham to Dr. H. M. Haig are not disputed, and need not be particularly set forth here. They may be found in the testimony filed with this report, if desired.

9. The children of Andrew J. Mobley and of Mrs. Lucretia McCrorey seem to have received from John Mobley and from his estate an amount of land at least equal to what would have been their share of the estate if it had been equally divided among the children of said John Mobley.

As matter of law I find: 1. That the deed from Marion R. Mobley, Andrew J. Mobley, Nancy W. Jones, James H. Rion, committee of John C. Mobley, C. E. Jeter, Mary I. Mobley, Lucretia McCrorey, and Reuben Mobley to C. E. Hill, S. J. Hill, J. M. McCrorey, and C. F. McCrorey, having been made by the heirs of John Mobley in pursuance of the known wish and intention of their father, to grantees who were in possession of the premises conveyed, who had been placed in possession thereof by the said John Mobley, and who had expended money and labor in improving the property, has the same legal force and effect as if it were the deed of John Mobley himself, and is paramount to the will, which could only operate effectively upon such property as John Mobley had the legal and equitable title to at the time of his death.

2. That Andrew J. Mobley, as executor of the will of said John Mobley, never had any legal possession of or dominion over the said tract of land.

3. That in no just sense can Andrew J. Mobley be said to

have retained for himself what he never had possession of or dominion over.

4. That the said land having never been conveyed to Mrs. Lucretia McCrorey under the provisions of the eighth clause of said will, nor retained for himself by said Andrew J. Mobley under the provisions of the ninth clause thereof, it never became subject to the limitations contained in the fifth, sixth, and seventh clauses of said will : that the children of Andrew J. Mobley and Mrs. Lucretia McCrorey have no claim to any interest in said land as remaindermen under said will; but can only claim through their respective father, Andrew J. Mobley, and mother, Lucretia McCrorey ; and that they are estopped from averring against the deed of their respective ancestors.

5. That the defendant, H. M. Haig, has a good legal and equitable title to the premises sought to be partitioned in this action, derived from the heirs of John Mobley, who perfected and completed by their deed the equitable title which was in C. E. Hill, S. J. Hill, J. M. McCrorey, and C. T. McCrorey at the death of said John Mobley.

6. That the plaintiff and his brothers and sisters and the children of Mrs. Lucretia McCrorey are not entitled to the partition and division of the land prayed for, nor to have an accounting of the rents and profits thereof from the defendants, J. D. Cummings, as assignee, and Dr. H. M. Haig.

7. That the complaint herein should be dismissed, with costs against the plaintiff and such of the defendants as are the children of Andrew J. Mobley, and claim the same rights as are demanded by the plaintiff.

The Circuit decree was as follows :

This case came up before me for a hearing upon exceptions filed by the plaintiff to the report of H. N. Obear, Esq., special referee, who reported that the plaintiff and certain of the defendants, whose rights were identical with those of the plaintiff, had no title or interest in the tract of land described in the complaint. The referee further reported and recommended that the complaint be dismissed with costs.

The status of the case, so far as the proceedings are concerned,

is fully and correctly set forth in the report of the referee. From this report and the testimony it appears that the action was brought for the partition of a certain tract of land, situate in Fairfield County, and for an accounting for the rents and profits thereof on the part of certain of the defendants who have held the land adversely for some years. The plaintiff, as well as the defendants, whose rights are alleged to be of the same character, claims an interest in the land described in the complaint under the will of John Mobley, late of Fairfield County.

From the testimony it appears that John Mobley died in the month of May, 1879. That his wife, Catherine Mobley, died about three years previous to his death, and his son, Andrew J. Mobley, father of the plaintiff, died afterwards, on the 20th day of December, 1883. At the time of his death John Mobley left surviving him the following children, to wit: Nancy W. Jones, Lucretia McCrorey, Andrew J. Mobley, Mary I. Mobley, Marion R. Mobley, C. E. Jeter, and Reuben Mobley, and the following grandchildren, to wit: John C. Mobley, a lunatic, son of a deceased son, and Catherine E. Hill, Susan J. Hill, John M. McCrorey, and Charles T. McCrorey, children of a deceased daughter, Dorcas McCrorey. For some time after the death of John Mobley it was supposed by his children and grandchildren that he had left no will; consequently his daughter, Mrs. Nancy W. Jones, who had managed his affairs for some time before his death, administered upon his personal estate and qualified as administratrix on the 18th day of June, 1879. The personal estate was then divided according to the statute of distribution, and on the 24th day of July, 1879, the surviving children of John Mobley, with James H. Rion, as committee of John C. Mobley, lunatic, a grandson, joined in the execution of a deed of conveyance of the tract of land, which is the subject matter of this action, to Catherine E. Hill and the other children of Dorcas McCrorey, a deceased daughter, for the expressed "purpose of equalizing the division of the real estate of said John Mobley, deceased."

About a year after the death of John Mobley his will was discovered, which was duly admitted to probate, and filed on the 27th day of January, 1880, and Andrew J. Mobley duly quali-

fied as the executor thereof. The eighth clause of the testator's will is as follows: "All the residue of my estate, both real and personal, I give, devise, and bequeath unto my wife, Catherine Mobley, in trust, first, that my said wife may have so much thereof for her support and maintenance as she may deem necessary and proper; and secondly, in trust, that she will divide the same among my children as she may think right and equitable, according to her best discretion, excepting my three children, Marion R. Mobley, Mrs. Dorcas McCrorey, and Mrs. Nancy Thompson, which three children are to receive no part of the above residue given to my wife; and in further trust, that my said wife shall, by deed, duly executed and recorded by her, shall subject the property so given by her in said division, the same limitations as are contained in the 5th, 6th, and 7th clauses of my will."

The ninth clause of the will is as follows: "In case my said wife shall die before me, or in case my said wife shall survive me and die before she has executed the trusts aforesaid—in the first case, I give, devise, and bequeath said above residue given to my wife in trust, to my son, Andrew J. Mobley, in trust, that he, according to his best discretion, will divide the same among my children, the three above excepted in the eighth clause, retaining to himself so much thereof as he may think right and proper, and retaining in his hands as trustee of my son, Reuben Mobley, so much thereof as he may think right and proper. And in the second event above mentioned, that is, if my wife, having survived me, and partially executed the trusts aforesaid, I give, devise, and bequeath to my said son, Andrew, the residue of the said property so undisposed of by her, in trust, that he will carry out and perfect the trusts directed to be executed by my said wife."

The tenth clause of the will is as follows: "I do hereby impose upon the property which my son Andrew or my said son Reuben may receive, the same limitations as are imposed on the property given in the 5th, 6th, and 7th clauses of this, my will." The eleventh clause of the will is as follows: "I do hereby appoint my son, Andrew J. Mobley, trustee of my son, Reuben Mobley, and the *property* which shall be allotted to my said son

Reuben shall be vested in said trustee for the use of my son Reuben, subject to the limitations aforesaid."

The limitations referred to in the 8th ·clause, as contained in the 5th, 6th, and 7th clauses, are in substance the same, and operate upon the bequests and devises to his three daughters therein named, to wit: Mrs. Catherine E. Jeter, Mrs. Lucretia McCrorey, and Mrs. Marion R. Mobley. By the 5th clause of the will the testator makes a bequest of certain slaves then in the possession of his daughter, Mrs. Catherine E. Jeter, naming the slaves, and limits her estate therein by the use of the following language : "for the sole and separate use of my said daughter during her life, and at her decease to her issue who may be then living, according to the statute of distribution ; and in·case my said daughter shall die without leaving children living, or in case she should die leaving children living, and all the said children should die before the age of twenty-one years of age, without leaving any children, in either event said negroes and their increase shall return to me if living, and if dead shall return to my estate, and be equally divided among my distributees, according to the statute of distributions. The property above mentioned is valued by me at $21,500." The same limitations are imposed upon the property given to his other daughters before mentioned by the 6th and 7th clauses of his will.

The tract of land in dispute in this action was not included in any of the specific devises made by his will, and the testimony clearly shows that John Mobley did not convey it away by deed during his life time. The proof is equally clear that he was seized and possessed thereof during his life-time, and that the same was returned for taxation in his name up to the date of his death. So far, therefore, as the legal title may be brought in question in this action, it is very clear to my mind that this land fell under and was part of the estate devised by John Mobley by the residuary clause of his will. But the defendant, H. M. Haig, who holds and claims title under Holmes & Durham, alleges that, in equity, he is the sole and absolute owner of the land in question. His claim is founded upon a deed from J. D. Cummings, assignee, for the benefit of the creditors of Holmes & Durham. Holmes & Durham were the mortgagees of John

M. McCrorey, and became purchaser of the land at a sale made for partition of the land among C. E. Hill, J. M. McCrorey, and S. J. Hill, children of Dorcas McCrorey. They were parties to the action which resulted in the sale .because they held a mortgage upon the undivided interest of John McCrorey.

When Holmes & Durham obtained their mortgage and secured what they supposed to be a lien upon the land, the will of John Mobley had been discovered, probated, filed, and recorded in the office of the Probate Judge for Fairfield County. The McCrorey children were in possession of the land in dispute at the time this mortgage was taken; and Holmes & Durham, through whom H. M. Haig claims title, were bound to take notice of the character of their possession as well as of the deed under which they claimed to hold it, and also the will of John Mobley, both being of record. If they had only referred to this deed and will, they would have easily discovered all that these instruments would have disclosed. The defendant, H. M. Haig, who derives title from them, cannot stand in a more advantageous position than they did, nor can he claim any greater or superior rights. than could be asserted by his grantors in this action.

From a careful consideration of the testimony in this case I am, therefore, fully and perfectly satisfied, and am bound to hold, that John Mobley was seized and possessed, legally and equitably, of a fee simple interest in this land at the time of his death, and that the same passed under the residuary clause of his will. To my mind the testimony shows this most clearly and conclusively, and all the circumstances tend to confirm and strengthen the con-clusion. He never was pleased or satisfied with the marriage which his daughter, Dorcas, contracted with McCrorey, and in his will he expresses in clear and unmistakable language his intention and determination that she should not share or partici-pate in the division of his residuary estate. It is true that he prepared a plat of this particular land after he had made his will, and said he intended the land for her, or that he intended to give it to her. He prepared a deed for her, and said he intended to give her the land. But the preponderance of the testimony shows that he, for reasons best known to himself, never executed the deed he had prepared, and I have no doubt that he revoked

8—35

his expressed intention and never signed the deed. He at the same time prepared deeds for some of his other children, said he would have them recorded, and it appears that he did sign and record them, but no deed or record of a deed can be found to Dorcas McCrorey. If he ever gave her this land, or ever executed or recorded a deed therefor, where is the proof of it? If he intended to give her the land and did not revoke his intention, how easy it would have been for him to have signed the prepared deed and had it recorded in the same manner that he signed and recorded deeds to some of his other children? These facts and circumstances, to my mind, clearly indicate that if John Mobley ever intended to give this land to Dorcas McCrorey, he revoked such intention, and perhaps destroyed the deed he had prepared.

Again, I am satisfied from the testimony that John Mobley did not put the McCrorey children in possession of the land to hold it as their own. Mr. Jones, the husband of Nancy W. Jones, who became very familiar with Mr. Mobley's business affairs, because his wife acted as agent or manager of Mr. Mobley's property, says positively that the McCroreys did not go into possession of the place as their own, that Mr. Mobley wanted to try them, and that they did not work to please him. All the surrounding facts and circumstances corroborate his testimony. No deed was ever made by John Mobley to them, or any of them ; but, on the contrary, the tract continued to be returned and assessed for taxation in his name. Mrs. Jones, his agent, paid the taxes out of funds of John Mobley up to the time of his death. John Mobley not only retained the land in his name, but asserted in the most positive manner his rights of ownership and control over the land by telling Mrs. Jones repeatedly to put them (the McCroreys) off the place. If he ever intended to donate this land to the children of Dorcas McCrorey, it is very strange that he did not convey it to them when they went into possession of it. It would have been very easy to have done this, yet the undisputed facts show that he never did so.

Conceding, however, that John Mobley expressed an intention to give the land to the McCroreys, as testified to by E. P. Mobley, such expression of intent to give, standing as it does, cannot

in law amount to gift on his part. It was not a gift, but a mere expression of intention to give, perhaps at some future or indefinite time, and there is absolutely nothing in such expression that precludes the idea that could revoke such intention at pleasure. The law cannot found a gift, especially of land, upon such vague and indefinite expressions of an intention to give, when it so clearly appears that the person was at liberty to revoke such intention at pleasure, and it is not for the courts to control the minds or wishes of parties so as to construe a mere expression of *intention to give* into an actual, complete, and absolute gift.

Again, I am unable to agree with the learned referee in the legal proposition, that the deed of John Mobley's surviving children was, in effect, the deed of John Mobley himself. The land did not descend to them by operation of law, but, as before stated, passed under the will of John Mobley. Their rights in the land were measured by the terms of the will, and they had not the legal right to divert the property from the channel marked out for it by the testator. They could not by any act or deed of theirs defeat or curtail the rights of remaindermen under the will, especially when no right had vested or could vest in any of them until the trustee, who, by the terms of the will, became vested with the legal title, had exercised the discretion lodged in him by the testator himself. According to my view of the facts of this case, the deed of Marion R. Mobley and others to C. E. Hill and others, the children of Dorcas McCrorey, made after John Mobley's death and in face of the will is void, in so far as it purports to convey a fee simple interest in this land to the McCrorey children.

It is clear to me that John Mobley intended to impress or impose upon all of the property constituting his residuary estate the same limitations that are expressed in the 5th, 6th, and 7th clauses of his will. It is patent upon the face of the will itself, and seems to me so plain that nothing further need be said on this point. Such being the case, I hold that the children of Andrew J. Mobley and Lucretia McCrorey (both of whom have died) are entitled to partition of this land, so that they may enjoy their respective interests in severalty. They are entitled to their interests under their grandfather's will and the deeds of

their parents cannot defeat their rights in the premises. It is, therefore, ordered and decreed, that the plaintiff, and such of the defendants as are children of A. J. Mobley or Lucretia McCrorey, are entitled to a partition of the land described in the complaint.

It is further ordered, that the case be recommitted to the referee, H. N. Obear, Esq., to inquire and report to this court what are the proportionate interests of said parties in said tract of land, and also to inquire and report whether an actual partition in kind is practicable, and that he report his findings to this court with all convenient speed.

The defendant, H. M. Haig, appealed on the following grounds :

I. Because his honor held "that John Mobley intended to impress or impose upon all of the property constituting his residuary estate the same limitations that are expressed in the 5th, 6th, and 7th clauses of his will."

II. Because his honor held and decreed "that the plaintiff and such of the defendants as are children of Andrew J. Mobley or Lucretia McCrorey are entitled to a partition of the land described in the complaint."

III. Because his honor did not hold and adjudge that, under the will of John Mobley, the limitations expressed in the 5th, 6th, and 7th clauses of said will only attached to such shares or portions of the residuary estate as were retained by Andrew J. Mobley for himself or as trustee for Reuben Mobley, in the contingency which did happen, of the wife of said John Mobley dying before the testator, and in which case, in the 9th clause of said will, he devised and bequeathed his residuary estate to his son, Andrew J. Mobley, in trust, that he, according to his best discretion, will divide the same among the testator's children, the three mentioned in the 8th clause excepted, "retaining to himself so much thereof as he may think right and proper, and retaining in his hands as trustee of 'testator's' son, Reuben Mobley, so much thereof as he may think right and proper."

IV. Because his honor did not hold and adjudge that the plaintiff, and such of the defendants as are children of said

Andrew J. Mobley, are only entitled, under the will of John Mobley, as remaindermen, after their father's life estate, to such portion of the residuary estate as said Andrew J. Mobley retained for himself as his share thereof, and as the tract of land described in the complaint was not retained by said Andrew J. Mobley as any part of his share of said residuary estate, his children are not entitled to a partition thereof.

V. Because his honor did not hold and adjudge that such of the defendants as are children of Lucretia McCrorey, deceased, if the limitations expressed in the 5th, 6th, and 7th clauses of the will of John Mobley are imposed upon her portion of his residuary estate, are only entitled as remaindermen, after her life estate, to such portion of said residuary estate as was assigned, divided off, or conveyed to her by the said Andrew J. Mobley as the share of said Lucretia McCrorey, and that, as the tract of land described in the complaint was not so assigned, divided off, or conveyed by the said Andrew J. Mobley to said Lucretia McCrorey, as any part of her share of said residuary estate, her children are not entitled to a partition thereof.

VI. Because his honor did not hold and adjudge that as the plaintiff and such of the defendants as are children of Andrew J. Mobley or Lucretia McCrorey are not of the designated class, to wit, children of John Mobley, among whom the residuary estate was to be divided, according to the 9th clause of the will, and as the said Andrew J. Mobley and Lucretia McCrorey received respectively their full share of said estate, if an equitable division thereof were made, neither the plaintiff nor such of the defendants as are children of said Andrew J. Mobley, or of the said Lucretia McCrorey, are entitled to an interest or share in the tract of land described in the complaint.

VII. Because his honor held "that John Mobley was seized and possessed legally and equitably of a fee simple interest in the tract of land in question at the time of his death, and that the same passed under the residuary clause of his will."

VIII. Because his honor held that "the deed made by Marion Mobley and others to C. E. Hill and others, children of Dorcas McCrorey," on the 24th day of July, 1879, "is void, so far as it

purports to convey a fee simple interest in the tract of land described in the complaint."

IX. Because his honor found as a fact "that John Mobley did not put the McCrorey children in possession of this land to hold as their own."·

X. Because his honor did not find and hold that, from the weight of the testimony, there is such evidence of a parol gift of the tract of land in question by John Mobley to the children of Dorcas McCrorey, followed by improvements made by them thereon, and possession thereof up to the time of his death, as induced and warranted the execution by all of the children of John Mobley of the aforesaid deed of conveyance expressed therein, as made "in pursuance of the intention and wish of their said father, John Mobley, deceased;" and that such deed having been made with full covenant of warranty, the parties thereto and their privies are estopped thereby from claiming any title or interest in the said premises against the defendant, H. M. Haig; and neither the plaintiff nor such of the defendants as are children of the said Andrew J. Mobley or Lucretia McCrorey have any independent right or equity in or to said premises which would entitle them to disturb the possession of the defendant, H. M. Haig, who claims title through said deed.

XI. Because his honor ordered that the case be recommitted to the referee, and did not adjudge that the complaint be dismissed with costs, as recommended by said referee.

*Mr. A. S. Douglass*, for appellant.

*Mr. J. F. McDonald*, contra.

February 24, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. The plaintiff brings this action for the partition of a certain tract of land containing 500 acres, more or less, more fully described in the complaint, claiming that he and his five brothers and sisters, as children of Andrew J. Mobley, deceased, defendants herein, are entitled each to one undivided thirty-sixth part thereof, and that the three children of Lucretia McCrorey, deceased, who are likewise defendants,

are each entitled to two thirty-sixths thereof, and that defendant, Cummings, who has, since the commencement of this action, conveyed his interest to H. M. Haig, who has been made a party defendant herein and is now the appellant, is entitled to the remaining twenty-four thirty-sixths during the lives of the surviving brothers and sisters of said Andrew J. Mobley and Lucretia McCrorey, named in the complaint. The plaintiff alleges that the said tract of land now sought to be partitioned is a part of the residuary estate of his grandfather, John Mobley, and his claim is based upon the following clauses contained in the will of the said John Mobley :

"8th item. All the residue of my estate, both real and personal, I give, devise, and bequeath unto my wife, Catherine Mobley, in trust, first, that my said wife may have so much thereof for her support and maintenance as she may deem necessary and proper ; and, secondly, in trust, that she will divide the same among my children as she may think right and equitable, according to her best discretion, excepting my three children, Marion R. Mobley, Mrs. Dorcas McCrorey, and Mrs. Nancy Thompson (now Mrs. Jones), which three children are to receive no part of the above residue given to my wife ; and in further trust, that my said wife shall, by deed to be duly executed and recorded by her, subject the property so given by her in said division (to) the same limitations as are contained in the 5th, 6th, and 7th clauses of this my will.

"9th. In case my said wife shall die before me, or in case my said wife shall survive me and die before she has executed the trusts aforesaid ; in the first case I give, devise, and bequeath said above named residue, given to my wife in trust, to my son, Andrew J. Mobley, in trust, that he, according to his best discretion, will divide the same among my children, excepting the three above excepted in the 8th clause, retaining to himself so much thereof as he may think right and proper, and retaining in his hands as trustee of my son, Reuben Mobley, so much thereof as he may think right and proper. And in the second event above mentioned, that is, if my wife having survived me and partially executed the trusts aforesaid, I give, devise, and bequeath to my said son, Andrew, the residue of said property so undisposed

(of) by her, in trust that he will carry out and perfect the trusts directed to be executed by my said wife.

"10th. I do hereby impose upon the property which my son, Andrew, or my said son, Reuben, may receive the same limitations as are imposed on the property given in the 5th, 6th, and 7th clauses of this my will."

Of the clauses referred to in the 8th and 10th clauses as defining the limitations, only the 6th is set out in the "Case" from which we infer that it is to be taken as a fair sample of the other two. The limitations as there defined may be stated briefly to be, to the devisee for life, with remainder to such issue of the devisee as may be then living. So that, practically, the claim of the plaintiff is that the land in question constituted a part of the residuary estate of the testator, and that the share of his father therein could be held by him only for his life, and that upon his death the same was vested in plaintiff, jointly with his brothers and sisters, and that the same is true as to the share of Mrs. Lucretia McCrorey. This claim of the plaintiff is stoutly contested by the appellant upon various grounds, which will be hereinafter referred to and considered so far as the same are necessary to a decision of this case.

Without undertaking to state the facts necessary to a full consideration of the several questions raised by this appeal, for which reference must be had to the report of the referee and the decree of the Circuit Judge, both of which should be embraced in the report of this case, it will be sufficient to state here certain leading and more prominent facts. It appears that the testator, John Mobley, having duly made his last will and testament some time in the year 1860, departed this life in June, 1879, his wife, Mrs. Catherine Mobley, having predeceased him. For some time after his death all parties concerned supposed that he had died intestate, and therefore letters of administration upon his personal estate were granted to one of his daughters, who seems to have made distribution of the same under the statute for the distribution of intestates' estates. Soon after the death of John Mobley, to wit, on the 24th of July, 1879, the surviving children of said John Mobley united in executing a deed for the land in question, to the children of Mrs. Dorcas McCrorey, a

predeceased daughter of the testator, who, with the two. others named, had been excluded from participation in the residue of testator's estate by the 8th clause thereof, as stated above. This deed purports to be in consideration of the sum of three dollars, "and for the purpose of equalizing the division of the real estate of said John Mobley, deceased, and in pursuance of the intention and wish of our said father," and contains full covenant of warranty. Subsequently to this, the will was discovered and admitted to probate.

The land covered by this deed is now claimed by the appellant, H. M. Haig, through intermediate purchasers for valuable consideration, from the children of Dorcas McCrorey. Appellant also claims that said land was conveyed to Dorcas McCrorey by the testator in his life-time; and also that he made a parol gift thereof to the children of said Dorcas McCrorey, but his claim, as we understand it, rests principally upon his construction of the will, which will be presently noticed. It does not appear that the land in question was ever retained by Andrew J. Mobley as his share, or as the share of his brother, Reuben, or that he was ever in possession thereof. On the contrary, although he lived for about a year after the land was sold at public outcry, as the property of those of the children of Dorcas McCrorey who had bought up the interests of the others, and bought by a stranger to the family, there is no evidence that he ever took any steps to reclaim the land or set up any claim to it as a part of the residue of the testator's estate. Although there is evidence tending to show that Andrew J. Mobley conveyed to some of the children of the testator portions of the residue, there is no evidence that the trusts alleged to have been cast upon him by reason of the death of his mother, under the 9th clause of the will, had been fully executed; for there is no evidence, and no claim, that the land here in question, alleged to be a part of the residue, was ever conveyed by him to any one under the terms of the will. So that if the trusts imposed upon his mother by the 8th clause of the will, were cast upon him, by reason of her death, under the 9th clause, then such trusts, if executed at all, were only partially executed.

After this brief outline of the facts, we will proceed to con-

sider what we regard as the controlling questions in the case. The first question to be considered is, whether the Circuit Judge erred in holding that the land in question never passed to Mrs. Dorcas McCrorey by deed, or to her children by parol gift from the testator ; for if there was error in this respect, then the other questions presented cannot arise. We agree entirely with the view taken of this matter by the Circuit Judge. There was practically no evidence of the *execution* of any deed from testator to Dorcas McCrorey, for though such a deed was prepared at the same time that others were prepared for others of the children, there is practically no evidence that it was ever executed; for the strongest witness for appellant, J. C. Caldwell, only says that "this deed was *signed* by John Mobley on 12th April, 1871, as witness infers from the fact that witness drew up other deeds" on that day. He does not say that the deed was ever *delivered*, and there seems to be no doubt, from the testimony, that the testator retained all of the deeds in his possession and actually altered one of them. In view of the strong testimony showing that the deed to Dorcas never was executed, we think the Circuit Judge was entirely correct in his conclusion that no such deed was ever executed. So, too, as to the alleged parol gift of the land to the children of Dorcas. At most, it amounts only to evidence of an *intention* to give, for no witness testified that he ever heard testator say he *had given* the land to those children. But, without going into any further discussion, we are content to rest our conclusion upon the reasoning of the Circuit Judge.

The next inquiry is, as to the proper construction of the will ; and here we are unable to concur with the Circuit Judge. It will be observed that the testator, after providing in the 8th clause of his will for the disposition of the residue of his estate amongst his childen, except the three specially excluded, in such manner as testator's wife might think right and equitable, with the special injunction to the wife that she should, by deed, subject the property so given off by her to certain limitations therein defined, by reference to preceding clauses of the will ; the testator, in the 9th clause of the will, looking to two contingencies which might very well arise, proceeded to pro-

vide for them in two distinct and separate sentences of that clause. The first contingency for which he makes provision, was that of the wife dying before the testator—the contingency which actually occurred—in which the provision is that the residue is devised and bequeathed to Andrew J. Mobley, *not*, it will be noticed, upon the *same trusts* as the same had been given to the wife, but, in the language of the testator, "in trust, that he, according to his best discretion, will divide the same among my children, excepting the three above excepted in the 8th clause, retaining to himself so much thereof as he may think right and proper, and retaining in his hands as trustee of my son, Reuben Mobley, so much thereof as he may think right and proper," without any such injunction as had been given to the wife in the 8th clause, to subject the property given off by her to the children to any limitation whatever.

Having thus provided for the first contingency—the one which actually happened—the testator then proceeds, in a separate and distinct sentence, separated from the foregoing by a period, to make provision for the second contingency—that of the wife surviving him and dying, after partially, but not fully, executing the trusts imposed upon her by the 8th clause—in which case the provision is that the property so undisposed of by the wife is given to the son, Andrew, "in trust, that he will carry out and perfect the trusts directed to be executed by my said wife." It is very clear that if the testator had stopped at the provision for the first contingency, which actually happened, there could be no ground for claiming that the property intended for certain of his children should be affected by any limitation whatsoever; for there is not a word in the sentence providing for such contingency indicating any intention on the part of the testator that such property should, in that contingency, be affected with any limitation of any kind.

So that in order to sustain the construction adopted by the Circuit Judge it is necessary to apply to the sentence providing for the first contingency, the concluding words of the sentence in which provision is made for the second contingency, whereby, practically, the residue of the property is given to the son, Andrew, upon the same trusts as are declared in the 8th clause, in-

cluding the trust to affix limitations to the portions given off to the several children; and the precise question, therefore, is whether this can be done without violating the rules of construction. One of the fundamental rules is that the intention of the testator, as ascertained from the words which he has used, and not from any conjectures which the court may make as to what would naturally and probably be his intention. A testator, within certain limits not necessary to be mentioned here, has the absolute right to dispose of his property as he sees fit, and prescribe such conditions and limitations upon which it shall be received by the objects of his bounty, as he may think proper, and although a court may be of opinion that the provisions which he chooses to make are unnatural and inconsistent with the ordinary instincts of humanity, it cannot, for that reason alone, conclude that the testator must have meant something different from what he has said in plain terms; for that would be making, not construing, the will.

As is said by Johnson, J., in *Manigault* v. *Deas* (Bail. Eq., 298), in considering a somewhat similar question: "But we are not permitted to give an effect to a will, contrary to the plain and obvious import of the terms used by the testator. * * * If speculations on the subject of intention were admissible, I should probably arrive at the conclusion to which this argument leads. Ignorant of the feelings which might have operated on the testator, I am ready to confess that I can see no reason why he should have made any distinction between these children. But we are forbidden by the rules of law to indulge in conjecture." So, here we may say, that while it is difficult to conceive of any good reason why the testator should, in the sentence making provision for the contingency which actually happened, have prescribed no limitation over, and in the sentence providing for another contingency which never happened, he saw fit to provide for limitations over, yet, as these two provisions are contained in two separate and distinct sentences, the one in no way connected with or referring to the other, we are bound to give to each the construction which its plain and obvious terms import. The testator has not seen fit to say that the limitations provided for in the second contingency were intended to be applied to the provision made

for the first contingency.   As was said in *Smith* v. *Hilliard* (3 Strob. Eq., at page 223) : "There is no rule of law that prohibits a testator from devising different estates in the same lands to the same persons, on the happening of successive events." And again : "Where there is a doubt as to the quantity of the estate devised, or whether it is vested, the rule is to presume that the testator intended to give an absolute rather than a qualified estate, and a vested rather than a·contingent interest."

It seems to us, also, that the provisions of the 10th clause of the will betray a consciousness on the part of the testator that he had not subjected the shares of the several children in the residue, in the event which has happened, to any limitation ; for if he had, then there would have been no necessity for the 10th clause.   Under that clause, if it had been shown that the land in question had been retained by Andrew for himself, under the provision made for the first contingency, then the claim of plaintiff might have been supported. But this was not only not shown, but the contrary appears to be the fact.

It seems to us that there is nothing in the will to show that the testator intended to subject the shares which the several children might receive, in the first contingency provided for, to the limitations provided for in the second contingency, which has not, and never can happen, but rather the contrary ; and that the only way in which this could be done would be by transporting the concluding words of the sentence providing for the second contingency, into the preceding separate and distinct sentence. This we think is contrary to authority.   See 1 Jarm. Wills, 3rd Am. Edit., 412–415; *Bowers* v. *Newman*, 2 McMull., 472; *Moon* v. *Moon*, 2 Strob. Eq., 327 ; *Dunlap* v. *Garlington*, 17 S. C., 567 ; and *Bell* v. *Towell*, 18 *Id.*, 95.

Inasmuch, however, as the share of the residue of the estate, which Andrew might be entitled to retain under the provisions of the 9th clause of the will, is expressly subjected to the limitation over by the terms of the 10th clause of the will, if it can be made to appear that Andrew was entitled to the whole or any portion of the tract of land in question, then the plaintiff would be entitled to partition of such share. But it will be remembered that the provision made in the contingency which

has happened—not that the residue shall be divided equally amongst the children for whom it was intended, but that it shall be divided by Andrew, according to his best discretion, he retaining for himself and his brother, Reuben, what he may think right and proper ; and as the person invested with this discretion is now dead and therefore cannot exercise it, the rule is that the division shall now be made equally. *Withers* v. *Yeadon,* 1 Rich , Eq., 331, recognized in the recent case of *Atkinson* v. *Dowling,* 33 S. C., 424.

In order to effect an equal division where the discretionary power has been only partially exercised, as seems to be the case in this instance, the rule is, that in order to effect equality those who may have received portions of the property from the donee of the power, in his life time, shall not be entitled to receive anything more until those who have received nothing shall be made equal. *Fortescue* v. *Gregor,* 5 Ves., 553 ; *Reade* v. *Reade, Ibid.,* 744. To determine the question whether the plaintiff is entitled to partition of the tract of land in question, it will be necessary for him to show that, under a division of the entire residue of the property, both real and personal, made under the principles above indicated, his father, Andrew J. Mobley, would be entitled to the whole or some portion of said tract. Now, while appellant has insisted in his argument here that so far from this being the fact, Andrew has in fact received more than his just proportion, yet as this matter was not passed upon in the court below, we cannot undertake to determine it here. The case must, therefore, be remanded to the Circuit Court for the purpose of enabling the plaintiff, if he shall be so advised, to show that he is entitled to partition under the views herein announced.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for such further proceedings as may be necessary to carry into effect the principles above laid down.